RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

2010 AUG -2 PM 12: 51

CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

We The People
Minister Suhkara A. Yahweh
Callean Yahweh
Raheem Yahweh
And Others
Plaintiffs

Civil Action
No. ______________

Vs.

President Barack Obama in his official capacity, 1600 Pennsylvania Avenue, N.W., Washington, D.C. 20220, Eric H. Holder, Jr., Attorney General of the United States of America, in his official capacity, 950 Pennsylvania Avenue, W., Washington, D.C. 20530-0001

Kathleen Sebelius Secretary of the United State Department of Health and Human Service in her official capacity, 200 Independence Avenue, S.W., Washington, D.C. 20201,

Timothy F. Geithner, Secretary of the Treasure of the United States in his official capacity, 1500 Pennsylvania Avenue, N.W., Washington, D.C. 20220,

Congressman Steve Cohen, Representative of the 9th District of Tennessee, United States Congress, in his official capacity, 167 N. Mid-American Mall, Memphis, TN 38103

Defendants

Case:
Assigned to:
Assigned Date:
Description: General Civil

Complaint for Declaratory
And Injunctive Relief

The defendant, Congressman Steve Cohen, did aid, consent and abet the defendants in implementing the Patient Protection and Affordable Care Act., individual mandate, which is unprecedented and unconstitutional. The Congressman sworn duty is to uphold the Constitution and not be con-conspirator in the violation of the Constitution. He must protect the Constitution of the State of Tennessee and it sovereignty, which is "We the people." Congressman Steve Cohen failed to carry out his duty and responsibility; therefore, he should be disqualified to seek his former office, as Ninth District Congressional Representative. His action not only violates the Constitution, but has a strong hint of Treason and Fraud against the sovereignty of the people. (Exhibit A)

- I -
Introduction

1. We the people, men, women, children, babies (unborn and born), elderly, poor, and employers, bring this action seeking a declaration pursuant in 28 W.S.C. §§2201-2202 that certain provisions of the Patient Protection and Affordable Care Act, Pub L, No. 148, 124 Stat 119, 111 Cong. 2d Sess, March 23, 2010, as amended by the Health Care and Education Reconciliation Act, III, Pub L, No. 152m 124 Stat 1029, 111th Cong. 2d Sess, March 30, 2010 (here after, "Patient Protection and Affordable Care Act"), are unconstitutional on their face and to obtain injunctive relief against enforcement of these provisions, which require individual Americans to purchase an approved health insurance policy known as the "individual mandate." It is from this unconstitutional act that Congressman Steve Cohen assumes the authority to usurp the authority of the Constitution of the State of Tennessee and its sovereignty. It is the responsibility of the Congress to remain as the sovereignty of the nation and the court to uphold the Constitution whenever it is violated.

2. "We the people" has been given an unconstitutional mandate requiring all individuals to purchase health insurance, which is an unprecedented form of federal government action. The government never required people to buy goods or service as a condition of lawful residence in the United States.

3. The "individual responsibility" provision in Section 1501, pages 320-340, would require anyone who fails to obtain a qualifying health plan to pay an annual tax penalty of $750 per adult family member and $375 per child, with a maximum penalty of $2,250 per family.

4. The act called the "individual mandate" tax penalty on a shared responsibility payment; says any person in the United States who fail to maintain a minimum essential coverage for one month or more, and who does not fall into one of a list of exceptions, rather than operating as a tax on income, this is a tax on the person and is, therefore, a capitation tax.

5. The Constitution does not grant Congress the power to regulate doing nothing or inactivity under the Commerce Clauses.

6. The Internal Revenue Services (IRS) may withhold tax refunds to enforce health care law. The IRS may not audit a person, but if the IRS does not receive notification that a taxpayer has insurance, the agency will notify the taxpayer that he or she must pay a tax penalty. If the penalty does not arrive, the IRS may withhold the tax refunds due to the filer.

7. The IRS will be in charge of enforcing the individual mandate that all have health insurance, and also in charge of making sure business provide health insurance for employers.

8. We the people are presently and concretely harmed by the Act because the people are compelled to adjust their fiscal affairs now to prepare thousands of dollars over the several years as required by the individual mandate and the separate shared responsibility payment provisions.

9. Health insurance contracts deal with a particular set of risks over a set period of time that may or may not materialize and both parties take a calculated risk based on the uncertainty of future events. A determination that the individual mandate is unconstitutional months or

years after an individual has involuntarily entered into insurance contracts that would leave both the individual and the insurance companies without effective remedy.

10. Individuals, who in hindsight, received more benefits than they paid to the company than they received in benefits during the life of the contract would want their policies invalidated, allowing the validity of the individual mandate to be determined before individuals are required to purchase health insurance policies will ensure all persons injured by it will be made whole, shall a court hold it invalid.

11. The Act's individual mandate, alone with the imposition of shared responsibility payment for failing to buy and maintain qualifying health insurance exceed the power of Congress under Article 1 of the Constitution of the United States and is, therefore, unconstitutional and cannot be enforced, Section 9, paragraph 4.

12. The Act also violates the rights of the Plantiffs, We the People, as set forth in the Religious Freedom Restoration Act of 1993 (RFRA) 42 USC §200 bb. et seg.

-II-
Jurisdiction and Venue

13. This is an action arising under the United States Constitution, 42 USC § 2000 bb et seq, and 28 USC §§ 2201-2202 seeking declaratory and injunctive relief to cure deprivation of the federal rights of Plaintiff, which have been and will be violated by Defendants. This Court has jurisdiction under 28 U.S.C. §§1331 and 1346.

14. Venue is appropriate in this Court pursuant to 28 U.S.C. §1399(e), because substantial parts of the acts, giving rise to Plaintiffs' claim have occurred in the Western District of Tennessee, Western Division and the defendant of the Constitution, Congressman Steve Cohen, resides in the Western District of Tennessee.

-III-
Other Plaintiffs

15. Section 440 and 1904 of the House bill (page 838), headed "Home Visitation" Program for families with your children (born), and families expecting children (unborn).

16. As a result of the violation of Article I, (Section 9 Paragraph 41 of the Constitution of the United States, the government now aggregates unto itself the right to invade the homes of families and usurp parental rights over childcare and development.

17. Government agents, "well-trained and competent staff," will provide parents with knowledge of age-appropriate child development in cognitive language, social, emotional, motor-domain, modeling, consulting and coaching on parenting practices" and "skills to interact with their child to enhance age-appropriate development.

18. It has Stalinist overtones in that it gives government the power to shape the very minds of future generations by seizing parental and educational power, legislating preferred educational methods and materials and limiting private educational options.

19. Whose parental principles and values will be used, their own or certain experts? What field and theory of childhood development will be applied or will it be "one size fits all."

20. Will they contextualize and personalize every form of parenting in their education or would they merely universally indoctrinate with their own?

21. Will the State's mediators understand every parent's social or religious core values on parenting?

22. Will they teach some secular progressive and religiously neutered version of parental values and wisdom?

23. When they consult and coach those who expect babies, would they even decide circumstances to be not beneficial for the children and encourage abortions.

24. Page 840 – The State "shall identify and prioritize serving communities that are in high need of such service, especially communities with a high proportion of low-income families.

25. Are we to further conclude by those words that low-income families know less about parenting?

26. Are middle and upper class parents better parents, less neglectful of their children and less needful of parental help and training?

27. This prioritized training is a biased, discriminating and even prejudicial stereotype generalization, which has no place in a federal government that is "by and for the people" law or practice.

28. The Employer Mandate (Sec. 1511-1513, pages 346-357), states that companies with more than 50 employees are required to offer qualified health plans to their full-time employees or pay a tax of $750 per full-time employee. Paying the $750 tax is a great deal cheaper than providing the health insurance.

29. If an employer offers insurance, but has an employee from a low-income family who qualifies for a premium subsidy in the "health insurance exchange" and decides to accept it.

30. The employer is stuck with a tax penalty of $3000 for that employee and every other employee who qualifies and makes the same choice . . . unless it is more than a quarter of the employees', in which case the tax is capped to $750 times the total numbers of full-time employees.

31. Workers will be permitted to opt out of their employers plan only if they qualify for a subsidy, have insurance through another family member, or if the employer covers less that 60 percent of their premium.

32. Hurting the Poor. If a company has a great deal of low-income workers, they can save money by dropping their health plan and just paying the $750 per-employee tax. (And, they can make as many employees as possible part-time).

33. If they have mostly middle-income workers, they face a heavy penalty-$3000-everytim they hire a worker from a low-income family. This is based on the employee's family income, not the income the employee is paid by any company.

34. A company could save $3000 by hiring someone with a working spouse or a teenager with working parents, rather than a single mother with three children.

35. If at least a quarter of the employees qualify for a premium subsidy based on their income and family size, the company is going to end up paying the same $750 per employee tax. . . whether they offer insurance or not.

36. Therefore, companies with a great deal of low-income employees will essentially be encouraged to drop their health plan entirely dumping the remaining high-income employees into the federal exchange of their own risk.

37. Employers will have a strong tax incentive to lay off the worker who needs the jobs the most – the people without other sources of income.

38. How will employers know who those workers are? The IRS will tell them when they send the tax bill.

39. Employers will be required (Section 1513) to inform the IRS of precisely who their employees are and during which months they carried insurance so the IRS will know who has to pay the "individual responsibility" tax.

40. The elderly will receive less care under the "Patient Protection and Affordable Care Act.

41. A federal health board will sit in judgment of medical procedures and protocols and impose guidelines on all providers for when to withhold certain kinds of care.

42. At a time when countless doctors are starting to refuse Medicare patients, the government will be paying doctors and providers even less to treat the elderly.

DEFENDANTS

Defendant President Barack Obama

43. Defendant President Barack Obama is the President of the United States and did sign "The Patient Protection and Affordable Care Act into law March 23, 2010 and the Health Care and Education Reconciliation Act, which amended it became law on March 30, 2010.

Defendant Eric Holder, Jr.

44. Defendant Eric H. Holder Jr. is the Attorney General of the United States and is chief law enforcement officer of the federal government. As such, he will be responsible for the enforcement of the "Patient Protection and Affordable Care Act. He is sued in his official capacity.

Defendant United States Department of Health and Human Services

46. Defendant United States Department of Health and Human Services (HHS) is established by 5 U.S.C.§101 and is an executive department of the United States government – charged with the principal protection of the health of all Americans. HHS's duties involve administering portions of the Patient Protection and Affordable Care Act.

Defendant Kathleen Sebelius

47. Defendant Kathleen Sebelius is the Secretary of the Department of Health and Human Services and is the principal authority within HHS. She is responsible for enforcing and administering the Patient Protection and Affordable Care Act. She is sued in her official capacity.

Defendant United States Department of Treasury

48. Defendant United States Department of Treasury is an executive department of the United States government charged with collecting federal taxes and enforcing federal tax laws. The United States government charged with collecting federal taxes and enforcing federal tax laws. The United States Treasury's duties include administering portions of the Patient Protection and Affordable Care Act.

Defendant Timothy F. Geithner

49. Defendant Timothy F. Geithner is the Secretary of the Department of the Treasury, including the collection or taxes and the enforcement of tax laws. He is responsible for enforcing the "shared responsibility payment provision of the Patient Protection and Affordable Care Act. He is sued in his official capacity.

Defendant Steve Cohen

50. Defendant Steve Cohen is a Congressman for the Ninth Congressional District of Shelby County, Memphis, Tennessee. As a representative of the people in Congress, he aided, consented to, supported and implemented the Patient Protection and Affordable Care Act and the "individual mandate," which is unconstitutional. He is sued in his official capacity.

IV

ALLEGATIONS OF FACT AND LAW

51. The Patient Protection and Affordable Care Act was signed into law by President Barack Obama on March 23, 2010, and the Health Care and Education Reconciliation Act, which amended it, became law on March 30, 2010.

52. Section 1501 of the Patient Protection and Affordable Care Act requires individuals and their dependents to purchase and maintain a level of minimum health insurance coverage.

53. Through the individual mandate, Section 1501 seeks to further Congress' stated purpose of forcing millions of Americans who do not have health insurance, but could afford such insurance if they re-adjusted their fiscal affairs and lifestyles, to purchase health insurance policies from private companies.

54. The individual mandate requires individuals to pay money to private insurance companies, not the government, and such coerced payments to private insurance companies are taxes.

55. Among the Act's other provisions that have some connection to the individual mandate is a provision stating that those who do not meet the requirements of the individual mandate will be subject to an annual shared responsibility payment to the government.

56. In general, the shared responsibility payment is imposed for any month in a given year that an applicable individual fails to maintain minimum essential coverage and is included on a taxpayer's income tax return for that taxable year.

57. Taxpayers are liable for any shared responsibility payment imposed upon their dependents, and spouses are jointly liable for any shared responsibility payments if they file a joint return.

58. Under the Act's complicated shared responsibility payment structure, the *minimum* shared responsibility payment amount per year for each adult who lacks minimum essential coverage will be $95 for 2014, $325 for 2015, $695 for 2016, and $695 or more for 2017 or later, increased due to cost-of-living adjustments. The minimum shared responsibility payment amount per year for minors under age eighteen who lack minimum essential coverage is one half of the amounts previously listed. When this calculation is used, the total shared responsibility payment amount per household for each taxable year cannot exceed 300 percent of the applicable dollar amount for that calendar year (disregarding the rule for minors under 18).

59. The above-mentioned shared responsibility payment calculation is disregarded when a certain percentage of the taxpayer's household income that exceeds the applicable threshold for filing a tax return is greater than the amounts listed above for the taxable year. The

applicable percentages are 1 percent of the excess amount in 2014, 2.0 percent of the excess in 2015, and 2.5 percent in 2016 or later.

60. When the percentage of the excess over the filing threshold is greater than the specific amounts listed above for the taxable year – which will often be the case for Plaintiffs and many other Americans – the taxpayer must pay the amount of the *excess with no specific dollar cap*. For example, where a taxpayer's household income (minus the amount of the applicable threshold for filing a tax return) is $50,000, the shared responsibility payment amount per year would be, at a minimum, $500 for 2014, $1,000 for 2015, and $1,250 for 2016 or later.

61. The authority of the federal government, including Congress, is limited to those powers stated in the Constitution of the United States. Rather than possessing a general police power to pass any and every law that it deems advisable, Congress must act within the limited, enumerated powers afforded to it by the Constitution.

62. The Tenth Amendment highlights the inherent limitations upon the authority of the federal government, including Congress, by stating: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

63. The relevant sections of the Patient Protection and Affordable Care Act are beyond the power granted to Congress under the Constitution and are, therefore, unconstitutional and unenforceable.

64. The only power under which Congress claimed to have the constitutional authority to impose an individual mandate to purchase health insurance coverage is the power to regulate interstate commerce found in Article I, Section 8.

65. No power enumerated or implied by Article I, Section 8, including the Commerce Clause or the Necessary and Proper Clause, grants Congress the power to enact a law that requires individuals who are not engaging in economic or commercial activity to enter a commercial transaction against their will.

66. In addition, the Act violates the rights of Plaintiffs Minister Suhkara A. Yahweh and others as set forth in RFRA, 42 U.S.C. § 2999bb *et seq.,* by forcing them to participate in an insurance system that is based upon principles that are diametrically opposed to their religious beliefs.

67. Although invalidation of the individual mandate would indirectly affect numerous other provisions of the Act, including the shared responsibility provisions of Section 1501, the present suit seeking the invalidation of the requirement that individuals pay money to private companies is not a "suit for the purpose of restraining the assessment or collection of any tax. . . ." within the meaning of the Anti-Injunction Act, 26 U.S.C. § 7421.

68. The Anti-Injunction Act's primary purpose – to ensure the prompt collection of taxes that are currently due without pre-collection judicial interference – is not implicated here because, among other things, Plaintiffs are currently injured by a *non-taxing provision* (the individual mandate), and no tax penalties are currently due to the government (or will be in the next few years) such that their collection would be delayed by this lawsuit.

69. Furthermore, improper application of the Anti-Injunction Act to delay a ruling on the constitutionality of the individual mandate until months or years *after* numerous individuals have involuntarily entered insurance contracts would leave those individuals, and the insurance companies, without an effective remedy due to the time-specific nature of insurance contracts.

70. Similarly, the Declaratory Judgment Act, 28 U.S.C. § 2201, is coterminous with the Anti-Injunction Act and, as such, this case is not a controversy "with respect to federal taxes" within the meaning of the Declaratory Judgment Act.

V.

CAUSES OF ACTION

COUNT ONE:

THE INDIVIDUAL MANDATE IS UNCONSTITUTINAL

BECAUSE IT EXCEEDS CONGRESS' AUTHORITY

(AS TO ALL PLAINTIFFS)

71. The allegations of the preceding paragraphs are hereby incorporated by reference.

72. 102. The Commerce Clause of Article I, Section 8 gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

73. Section 1501 of the Patient Protection and Affordable Care Act relies exclusively upon Congress's power to regulate interstate commerce as the sole basis for Congressional authority to enact the individual mandate, and sets forth congressional findings regarding the effects of health spending and health insurance regulation on the national economy and interstate.

74. These findings do not alter the fact that the Commerce Clause does not provide Congress with authority to enact an individual mandate to purchase health insurance.

75. The Supreme Court of the United States has held that the Commerce Clause allows Congress to regulate three categories of activity: 1) the channels of interstate commerce, 2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, and 3) economic or commercial activities that substantially affect interstate commerce.

76. Additionally, Congress may enact laws that are necessary and proper to the carrying out of its enumerated powers, including its power to regulate interstate commerce.

77. Mandating that individuals purchase health insurance is an unprecedented and unconstitutional expansion of congressional power, as Congress has never before required individuals to involuntarily buy a good or service under the guise of its Commerce Clause authority.

78. The Congressional Research Service has stated regarding the Commerce Clause basis for mandating the purchase of health insurance that,

> [d]espite the breadth of powers that have been exercised under the Commerce Clause, it is unclear whether the clause would provide a solid constitutional foundation for legislation containing a requirement to have health insurance. Whether such a requirement would be constitutional under the Commerce Clause is perhaps the most challenging question posed by such a proposal, as *it is a novel issue whether Congress may use this clause to require an individual to purchase a good or service.*

Cong. Research Serv., *Requiring Individuals to Obtain Health Insurance: A Constitutional Analysis,* at 3, July 24, 2009, *available at* http://assets.opencrs.com/rpts/R40725_20090724.pdf (emphasis added).

79. The individual mandate exceeds Congress' authority under the Commerce Clause, as it does not regulate economic or commercial activities that substantially affect interstate commerce.

80. The Supreme Court has never held that Congress' power to regulate commercial or economic activities that substantially affect interstate commerce includes the much broader power to reach *inactivity* and require persons who are not engaged in economic or commercial activities to become so engaged.

81. Merely existing in the United States without health insurance is not an economic or commercial "class of activity" that falls within Congress' authority to regulate under the Commerce Clause.

82. In addition, the Supreme Court's Commerce Clause cases do not support the claim that the individual mandate falls within Congress' authority as an essential part of a larger regulation of economic activity.

83. If Congress succeeds in asserting this unprecedented claim of authority, it would set a sweepingly broad standard unsupported by the Constitution that would allow Congress to dictate to individuals that they must, or must not, buy countless other goods services in the marketplace. To interpret the Commerce Clause to afford Congress such vast, all-encompassing authority over the daily lives of Americans would eviscerate the idea of a federal government of limited powers.

84. The individual mandate is not supported by Congress' authority to "make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the Government of the United States, or in any department or officer thereof." U.S. Const. Art. I, Sec. 8.

85. The individual mandate is not supported by any other enumerated power of Congress set forth in Article of the Constitution, nor did Congress invoke any other power in support of the mandate that individuals must purchase and maintain health insurance.

86. Furthermore, the coerced payment of money to private insurance companies, as the individual mandate requires, is a "tax" and, as such, does invoke Congress' authority under Article I, Section 8 of the Constitution "[t]o lay and collect Taxes, Duties, Imposts and Excises."

87. The imposition of shared responsibility payments upon individuals who do not comply with the individual mandate is not a constitutional exercise of Congress' taxing authority. If such payments are deemed to be a tax, they constitute an unlawful capitation or direct tax in violation of Article I, Section 2, Clause 3 and Article I, Section 9, Clause 4 of the Constitution.

88. As a direct and proximate result of Defendants' violation of the Constitution, Plaintiffs are suffering immediate and continuing harm, entitling them to the relief sought in their Prayer for Relief.

COUNT TWO:

THE INDIVIDUAL MANDATE VIOLATES

PLAINTIFFS' RIGHTS AS PROTECTED BY RFRA

(AS TO PLAINTIFFS MINISTER SUHKARA A. YAHWEH, CALLEAN YAHWEH, RAHEEM YAHWEH AND OTHERS)

89. The allegations of the preceding paragraphs 1 through 100 are hereby incorporated by reference.

90. The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*, prohibits the Federal Government from substantially burdening a person's exercise of religion – even through neutral laws of general applicability – unless the Government demonstrates that imposing the burden upon the person is the least restrictive means of advancing a compelling governmental interest.

91. RFRA states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1( c ).

92. The individual mandate provisions of the Act violate the rights of Plaintiffs Minister Suhkara A. Yahweh, Callean Yahweh, Raheem Yahweh and others as set forth in RFRA.

93. The Act's requirement that Plaintiffs purchase health insurance, under the threat of significant financial penalties, substantially burdens the exercise of their religion. They are forced to either join a health insurance system that contradicts the tenets of their faith or pay substantial penalties for following the tenets of their faith.

94. The substantial burden that the individual mandate imposes upon the Plaintiffs is immediate and concrete, as their financial affairs and lifestyles are presently affected because they are compelled to start preparing themselves now to pay thousands of dollars over the next several years as the individual mandate requires.

95. The individual mandate does not advance a compelling governmental interest, and imposing a substantial burden upon Plaintiffs and is not the least restrictive means of advancing any interest the government might have.

96. As a direct and proximate result of Defendants' violation RFRA, Plaintiffs Minister Suhkara Yahweh, Callean Yahweh, Raheem Yahweh and others are suffering immediate and continued harm, entitling them to the relief sought in their Prayer of Relief.

VI

Prayer for Relief

97. Wherefore, based on the foregoing cause of action as set forth in this complaint, Plaintiffs respectfully pray that the Court grant them the following relief.

A. That the Court enter a declaratory judgment in favor of all the Plaintiffs, We the People, declaring unconstitutional the individual mandate provisions contained in the Patient Protection and Affordable Care Act.

B. That the Court enter a declaratory judgment in favor of Plaintiffs Suhkara A. Yahweh, Callean Yahweh, Raheem Yahweh and others declaring that Defendants violated the Religious Freedom Restoration Act, that only qualified religion is exempt.

C. That the Court invalidate the Patient Protection and Affordable Care Act in its entirety and enjoin its enforcement should the Court determine that the individual mandate provisions are note severable from the rest of the Act.

D. That the Court enter a permanent injunction against the enforcement of the individual mandate provision contained in the Patient Protection and Affordable Care Act.

E. That the Court enjoin Congressman Steve Cohen who with the others did plan and with clear intent violate the Constitution of the United States' 10th Amendment, Article I, Section 9, Paragraph 4. Also, the Constitution of the State of Tennessee, Article I, Section 1, and the people sovereignty was murder by an act of Treason and Fraud; thus, he is not legally qualified to be a candidate because of the clear violations.

F. That the Court award all Plaintiffs such others and further relief as the Court deems just and proper.

Respectfully submitted, this 2nd day of August, 2010.

Minister Suhkara A. Yahweh
Callean Yahweh, Raheem Yahweh,
We The People Plaintiffs and Others
775 Porter Street
Memphis, TN 38126
(901)508-1343